IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

MICHAEL W. ROAT,

    Plaintiff,

v.                                   CASE NO. 2:09-cv-00438

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

### M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Both parties have consented in writing to a decision by the United States Magistrate Judge. Neither party has filed a brief in support of their respective positions.

Plaintiff, Michael W. Roat (hereinafter referred to as "Claimant"), filed an application for DIB on September 15, 2005, alleging disability as of September 24, 2004, due to carpal tunnel, neck, back, pelvic injury, high blood pressure, diabetes, heart problems, glaucoma, lung damage, depression, left arm, and arthritis. (Tr. at 15, 46, 52, 57, 76-80, 87-89, 125-34, 165-69.)[1]

---

[1] Claimant filed a previous application for DIB on November 3, 2003. This claim was denied on January 15, 2004, and Claimant did not appeal the determination.

The claim was denied initially and upon reconsideration. (Tr. at 15, 46-48, 52-54, 57-59.) On September 13, 2006, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 40.) The hearing was held on March 8, 2007 before the Honorable James P. Toschi. (Tr. at 27-30, 623-638.) By decision dated March 28, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-26.) The ALJ's decision became the final decision of the Commissioner on April 11, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 6-8.) On April 24, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently

engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant

3

satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 15.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of bilateral carpal tunnel syndrome, left ulnar compression neuropathy at the left cubital canal, chronic back and neck pain and hearing loss. (Tr. at 15-20.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 20.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 20-24.) As a result, Claimant cannot return to his past relevant work. (Tr. at 24.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as fast food worker, housekeeper, and cafeteria attendant which exist in significant numbers in the national economy. (Tr. at 25-26.) On this basis, benefits were denied. (Tr. at 26.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the

4

>  case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was 49 years old at the time of the administrative hearing. (Tr. at 24.) He has a tenth grade education. (Tr. at 628.) In the past, he worked as a roof bolter. (Tr. at 634.)

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it below.

<u>Physical Evidence</u>

Medical records indicate Ghassan Y. Dagher, M.D., opthalmologist, treated Claimant for glaucoma from August 11, 2000 to September 16, 2004. (Tr. at 440-448.) Although the handwritten notes are largely illegible, the most recent notations stamped

5

September 16, 2004 indicate that the diagnosis is "glaucoma/controlled." (Tr. at 440.)

Medical records indicate Harry H. Fathy, M.D. treated Claimant from March 6, 2001 to January 25, 2002 for carpal tunnel syndrome and neck pain, related to a mining accident on July 15, 1999. (Tr. at 181-89.) Dr. Fathy performed "release of transverse carpal ligament bilateral at Montgomery General Hospital on Tuesday, 05/29/01." (Tr. at 184.)

On August 14, 2001, Gregg M. O'Malley, M.D., Mountain State Orthopedic Associates, Inc., stated that he had examined Claimant regarding his carpal tunnel syndrome symptoms. He noted that Claimant had recent bilateral carpal tunnel surgeries. He found that Claimant

> is really pretty critical of these surgeons today feeling strong he was mishandled... I found that he did get excellent relief of his numbness and pain following each of these surgeries. He returned to work...approximately two months after the surgery he terms as having been rushed back to work inappropriately, but I have explained to him that I would consider that an extremely long time after surgery before he returned to work.

(Tr. at 179.)

On January 25, 2002, Dr. Fathy released Claimant regarding his carpal tunnel syndrome and transferred him to the service of Robert J. Crow, M.D. for his neck pain. (Tr. at 181.)

Records indicate claim was admitted to Charleston Area Medical Center ("CAMC") on February 26, 2002 and discharged on February 28, 2002. (Tr. at 190-202.) On February 26, 2002, Dr. Crow performed

a "microscopic dissection for C2-3, C3-4, C4-5, C5-6, and C6-7 posterior decompression with lateral recess decompression and foraminotomies (complete bilateral C3, C4, C5, and C6 laminectomies)." (Tr. at 193.)

On May 7, 2002, Claimant underwent a Functional Capacity Evaluation at CAMC Sports Medicine Center. (Tr. at 203-18.) N. Arthur Lilly, MS, ATC, Industrial Rehab Coordinator, stated:

> Mr. Roat demonstrated a max lift in a LOW-HEAVY physical demand level. Based on his max effort, my recommendation would be in LIGHT-MEDIUM with material handling on an occasional basis. Non-material handling; Reaching overhead is only occasional. It appears comfortable working range is mid thigh to chest height.
>
> RECOMMENDATIONS: I would complete approximately 3-4 visits with physical therapy to insure he is independent with home exercise program for cervical and bilateral carpal tunnel and start a Work Conditioning program for approximately 4-6 weeks with a goal of MEDIUM physical demand level with stable symptoms. At this time he is expressing a need to return to some type of gainful activity. Due to his pathology with limited motion in his neck and decrease in upper extremity strength, work activities involving above shoulder height probably will not be dependable. Vocational options may be considered.

(Tr. at 206-07.)

On April 3, 2002, James T. Smith, M.D. reviewed x-rays of Claimant's cervical spine. He concluded:

> The study consists of AP and lateral views. The patient has undergone an extensive posterior laminectomy extending from C3-C6. There is some degenerative arthritic change present at all levels from C3-C7, manifested by varying degrees of loss of disc space and by both anterior and posterior spondylosis. No malalignment is demonstrated.

(Tr. at 238.)

7

On July 17, 2002, Ronald E. Cordell, M.D., reviewed x-rays of Claimant's cervical spine. His impression:

> There is no evidence of subluxation demonstrated on flexion or extension views of the cervical spine. There are posterior osteophytes at multiple levels of the cervical spine. There has been surgical resection of the spinous processes of C3 through C6 vertebral bodies. On lateral film taken in neutral position there is mild reversal of the normal cervical lordosis.

(Tr. at 236.)

Medical records dated from September 12, 2002 to March 8, 2005 indicate Claimant was treated by Sammar Atassi, M.D. (Tr. at 449-86.) Although the handwritten notes are largely illegible, typed notes indicate Claimant had stable carotid stenosis, controlled Hypertension ["HTN"], controlled Hyperlipidemia, and controlled Non-insulin-dependent Diabetes Mellitus ["NIDDM"]. (Tr. at 450, 454, 456, 462, 464, 466, 467, 468.) Dr. Atassi also treated him for right knee pain resulting from an at-home accident. (Tr. at 458-60.)

On March 24, 2003, Thomas Miller, M.D., Radiologist, reviewed a chest x-ray of Claimant and concluded: "CLINICAL HISTORY: 45 year old white male complaining of exertional dyspnea. 10 years underground mining... IMPRESSION: Findings consistent with pneumoconiosis, category p/q, profusion 1/1. Thickening of minor fissure (pi)." (Tr. at 229.)

On April 23, 2003, Claimant was treated at New River Health Association. (Tr. at 219-28.) S. Mehta, D.O. diagnosed Claimant

8

with "[d]yspnea on exertion with probable OP [occupational pneumoconiosis]" and "[h]earing loss noise induced." (Tr. at 219-20.)

On May 31, 2003, Claimant was treated at Montgomery General Hospital emergency department when a rock fell on his left shoulder. (Tr. at 264-82.) He was diagnosed with a left shoulder strain. (Tr. at 253.)

On August 12, 2003, Claimant was treated at Montgomery General Hospital emergency department when he injured his right knee. (Tr. at 251-62.) He was diagnosed with a knee sprain. (Tr. at 271.) Kenneth Dwyer, M.D., radiologist, stated that a right knee x-ray demonstrated "mild degenerative changes...no evidence for an acute fracture or dislocation." (Tr. at 274.)

Records indicate Gary D. Rubin, M.D. treated Claimant from September 4, 2003 to October 27, 2003 for a left shoulder injury. (Tr. at 297-305.) Dr. Rubin wrote on October 27, 2003 that Claimant could return to work on November 3, 2003 and "is capable of lifting fifty-eight pounds if he uses both hands and is capable of lifting thirty-five pounds in each hand." (Tr. at 299.)

Records indicate Claimant underwent physical therapy from September 8, 2003 to October 31, 2003 at Montgomery General Hospital ["MGH"]. (Tr. at 307-83.) On October 31, 2003, Kimberly R. Estep, MS, MGH Industrial Rehabilitation Coordinator wrote in a discharge note that Claimant

9

>  attended 18 out of 19 scheduled sessions since beginning the Work Conditioning program...with one excused absence. He progressed to the 8 hour Work Hardening program on October 20, 2003. The patient indicates the following: Reports minimal low back pain, "Numbness" in bilateral hands, He reports no symptoms of the left shoulder... The patient's current Physical Demand Level is **Medium and is capable of Heavy up to 58 pounds**.

(Tr. at 307.)

On September 17, 2003, Janet Lauerman, M.A., recommended "binaural amplification" for Claimant in an audiology report. (Tr. at 283.)

On September 21, 2003, Clifford H. Carlson, M.D. reported that he had evaluated Claimant in regard to a September 14, 1999 Workers' Compensation cervical spine injury and a October 7, 1999 Workers' Compensation bilateral carpal tunnel syndrome injury. (Tr. at 239-50.) He opined that Claimant's cervical injury "has resulted in chronic lumbosacral spine sprain/strain syndrome. This has progressed to 14 percent whole-person impairment and equivalent permanent, partial disability award is indicated." (Tr. at 243.) In regard to the bilateral carpal tunnel syndrome, he opined that Claimant "had residual signs and symptoms despite 2 surgeries. This had progressed to 12 percent whole man impairment." (Tr. at 239.)

On October 6, 2003, Kenneth Dwyer, M.D., radiologist, reported that Claimant's left knee MRI was "abnormal...consistent with injury to the medial collateral ligament." (Tr. at 306.)

On October 14, 2003, H. S. Ramesh, M.D. evaluated Claimant.

10

(Tr. at 284-89.)  His impressions were: "1. Left shoulder strain/sprain.  2.  Bilateral mild degree Carpal Tunnel syndrome #354.0.  3.  Left ulnar compression neuropathy at Left cubital canal."  (Tr. at 284.)

On October 16, 2003, Harry Reahl, M.D., neurologist, wrote on a prescription form: "Michael Roat...was in office today with his wife."  (Tr. at 290.)

On October 23, 2003, Paul Bachwitt, M.D., orthopedic surgeon, examined Claimant in regard to an August 2, 2003 Workers' Compensation left shoulder injury.  (Tr. at 291-96.) Dr. Bachwitt opined that Claimant's "disability should last no greater than two months... I think he could undergo a functional capacity evaluation after he finishes his work conditioning if it is necessary to determine his level of function."  (Tr. at 294.)

Records indicate Claimant was treated two times per week at Fayette County Chiropractic from November 5, 2003 to January 9, 2004 for low back pain.  (Tr. at 392-403.)

On December 8, 2003, Saghir R. Mir, M.D., reported that he had evaluated Claimant for the Workers' Compensation Fund for a September 14, 1999 injury.  (Tr. at 412-25.) He diagnosed "chronic lumbosacral and sacroiliac strain from a crushing injury to pelvis." (Tr. at 416.)  He stated that Claimant had previously received a 7% impairment for the injury and found that the injury had progressed an additional 3% impairment.  (Tr. at 416-17.)

11

On January 8, 2004, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work with the ability to occasionally climb ladder/rope/scaffolds and to frequently do all other postural positions; and to have no manipulative, visual, communicative, or environmental limitations, save to avoid concentrated exposure to hazards. (Tr. at 384-91.) The evaluator, Rafael Gomez, M.D., noted Claimant's neck surgery, obesity, and type II diabetes in his conclusion that Claimant could perform medium work. (Tr. at 389.)

On March 10, 2004, Dr. Mir reported that he evaluated Claimant for the Workers' Compensation Fund for an August 2, 2003 injury. (Tr. at 404-11.) He diagnosed "blunt trauma to the left shoulder, AC joint and left Trapezius muscle" and recommended a 4% wholeman impairment. (Tr. at 409.)

On April 28, 2004, Bruce A. Guberman, M.D. evaluated Claimant's September 14, 1999 Workers' Compensation injury at the request of his representative. (Tr. at 426-39.) Dr. Guberman diagnosed "acute and chronic lumbosacral strain, post-traumatic." (Tr. at 429.) He recommended: "Since the claimant has already received a 10 percent impairment of the whole person for this injury, at the present time, I am recommending that he receive an additional 8 percent impairment of the whole person for the injury of September 14, 1999." (Tr. at 430.)

Records indicate Claimant was treated at Cabin Creek Health

12

Center from July 15, 2005 to January 27, 2006 for type II diabetes, hypertension, hyperlipidemia, arthritis, and depression. (Tr. at 515-28.) Handwritten notes dated January 27, 2006 indicate "DM [diabetes mellitus], HTN [hypertension], Hyperlipidemia: all under good control." (Tr. at 516 .)

On December 12, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work with the ability to occasionally climb ramp/stairs, stoop and kneel, and to never climb ladder/rope/scaffolds, balance, crouch or crawl; unlimited manipulative, save limited feeling (skin receptors); hearing limitation; environmental limitations were avoiding temperature extremes, noise, vibration, and hazards; no visual or speaking limitations were established; . (Tr. at 507-11.) The evaluator, Marcel Lambrechts, M.D. concluded: "This claimant symptoms seem mostly credible and well supported by several physical reports...FRC is reduced as noted." (Tr. at 512.)

On June 21, 2006, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work with the ability to occasionally climb ramp/stairs, stoop, kneel, crouch, but not climb ladder/rope/scaffolds, balance, or crawl; unlimited manipulative, save limited in reaching all directions (including overhead) and feeling (skin receptors); hearing limitation; environmental was

13

unlimited, save limitations to avoid concentrated exposure to vibration and hazards; no visual or speaking limitations were established. (Tr. at 543-550.) The evaluator, Rafael Gomez, M.D. concluded: "Patient was reviewed on 12/12/05 and reduced to light work. He was credible. There is no significant new medical information presented, only that he has OA [osteoarthritis] and that his DM [diabetes mellitus] and HTN [hypertension] are under good control. There is no change in RFC for light work." (Tr. at 548.)

Psychiatric Evidence

On October 13, 2005, a State agency medical source completed a clinical interview and Mental Status Examination of Claimant. (Tr. at 487-92.) The evaluator, Lester Sargent, M.A., licensed psychologist, reported that Claimant reported being "in constant pain and I am depressed about the divorce." (Tr. at 488.) Claimant reported "taking Zoloft for the past two months as prescribed by his family physician at Cabin Creek Clinic." (Id.) Mr. Sargent made an Axis I diagnosis of "Pain Disorder associated with both psychological factors and general medical condition...because pain was the predominant focus of clinical attention during the evaluation. The claimant is experiencing significant distress in social, occupational and other areas of functioning, secondary to multiple pain complaints." (Tr. at 490.) He noted that Claimant "is able to perform all basic living duties without assistance."

14

(Tr. at 491.)

On October 22, 2005, a State agency medical source completed a Psychiatric Review Technique form. (Tr. at 493-506.) The evaluator, Robert Solomon, Ed.D., found Claimant's impairment was not severe regarding his affective disorders. (Tr. at 493.) He found Claimant had no restriction of activities of daily living, and mild difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (Tr. at 503.) He stated that the evidence does not establish the presence of the "C" criteria. (Tr. at 504.) Dr. Solomon noted Claimant had no history of treatment for mental health or psychological problems and that his activities of daily living are within normal limits. (Tr. at 505.)

Records indicate Claimant was treated at Cabin Creek Health Center for physical health issues and depression. (Tr. at 515-28.) Handwritten notes dated August 12, 2005 indicate "Pt [patient] is doing well except for the depression. He still thinks he is depressed (he is separated with his wife). He is walking an hour daily, lost 11 pounds in 4 weeks." (Tr. at 521.) Notes dated September 9, 2005 state: "Pt [patient] is doing well, Zoloft 100 mg is helping. Much better. He finished the divorce paper last week." (Tr. at 519.) Notes dated November 7, 2005 state in part: "Depression: much better on Zoloft 100 mg."

On June 12, 2006, a State agency medical source completed a

15

Psychiatric Review Technique form. (Tr. at 529-42.) The evaluator, Debra L. Lilly, Ph.D., found Claimant had insufficient evidence to make conclusions regarding Claimant's mental health. (Tr. at 529.) Dr. Lilly noted:

> Clmt [claimant] alleges that his condition is worse but he has no additional Psych [psychological] tx [treatment]. 11/7/05 Cabin Creek Health Center - Depression - doing better on Zoloft. F/U [follow-up] at Cabin Creek after 11/05 fails to mention anything more about the depression. Clmt [claimant] was sent an ADL [activities of daily living] and PPQ [past psychological questionnaire] at recon [reconsideration] level but failed to return them - - claimant alleges that his activities are limited due to pain and depression. He has no additional medical evidence other than that indicating improvement. He has not returned forms indicating current activities. Insufficient evidence.

(Tr. at 541.)

<u>Analysis</u>

The court finds that the ALJ's decision dated March 28, 2007, is supported by substantial evidence. In his decision, the ALJ determined that Claimant suffered from the severe impairments of bilateral carpal tunnel syndrome, left ulnar compression neuropathy at the left cubital canal, chronic back and neck pain and hearing loss that limited Claimant to light work, reduced by nonexertional limitations. (Tr. at 15, 20, 25.)

The ALJ's findings about Claimant's physical impairments and their resulting limitations are supported by substantial evidence. As the summarized evidence of record indicates, Claimant's physical conditions did not render him disabled as defined in the Social

Security Act. 20 C.F.R. § 404.1520(g). (Tr. at 15-26.) Additionally, two State agency medical experts reviewed the evidence of record and completed Physical Residual Functional Capacity Assessments which concluded Claimant could perform light work. (Tr. at 24, 507-14, 543-50.)

The ALJ also concluded that Claimant did not suffer a severe mental impairment. (Tr. at 19-20.) The ALJ's decision is in keeping with the regulations related to the evaluation of mental impairments and is supported by substantial evidence. 20 C.F.R. § 404.1520a (2007). Notably, the ALJ concluded that while Claimant has a history of treatment for depression, he responded well to medication. (Tr. at 19, 541.) Additionally, a State agency medical expert reviewed the evidence of record and completed a Psychiatric Review Technique form which concluded Claimant's mental impairment was not severe. (Tr. at 493-505.)

The court further finds that the ALJ's pain and credibility findings are consistent with the applicable regulation, case law and Social Security Ruling ("SSR") and are supported by substantial evidence. 20 C.F.R. § 404.1529(b) (2007); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication, and he ultimately determined that

Claimant was not entirely credible.  (Tr. at 22-24.)

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: May 20, 2010

                                          Mary E. Stanley
                                          United States Magistrate Judge